**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **RALF VOLLANDT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:19-cv-311-KPJ** |
| | § | |
| **AXIS INSURANCE COMPANY** | § | |
| *doing business as* | § | |
| **SKI SAFE INSURANCE,** | § | |
| | § | |
| **Defendant.** | | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Axis Insurance Company's Motion for Summary Judgment on all of Plaintiff's Causes of Action (the "Motion") (Dkt. 57) and Motion to Strike Plaintiff's Affidavit (the "Motion to Strike") (Dkt. 67). Both Motions are fully briefed. *See* Dkts. 72–75. Having considered the parties' briefing, the accompanying evidence, and the record, the Motion (Dkt. 57) is **granted in part and denied in part**, and the Motion to Strike (Dkt. 67) is **denied**.

## I.     <u>BACKGROUND</u>[1]

SkiSafe serves as a managing general agent for Defendant Axis Insurance Company ("Axis"), and provides Axis with underwriting and claims management services. *See* Dkt. 57-1 at 1. One of the insurance products SkiSafe offers to the public on behalf of Axis is an ancient mariner boat insurance policy for pleasure boats. *Id*. at 2. To apply for an ancient mariner boat insurance policy through SkiSafe, an individual must complete an online application. *Id*. Supporting documentation is not required at the time of application. *Id*. If an online application is accepted,

---

[1] Except as otherwise noted, the following asserted facts are undisputed. Additionally, the Court cites to the CM/ECF pagination rather than any internal page numbers in the exhibits.

SkiSafe issues an insurance quote to the applicant. *Id*. If the applicant accepts the insurance quote and pays the premium, SkiSafe issues an ancient mariner boat insurance policy to the applicant. *Id*.

In June 2016, Plaintiff Ralf Vollandt ("Plaintiff") purchased a 2006 Chaparral Sunesta 274 (28') pleasure boat (the "Boat") in an auction conducted by Certified Sales Inc. ("Certified Sales") in the United States. *See* Dkt. 73-4; Dkt. 57-5 at 11; Dkt. 57-6 at 6. According to the Marine Bill of Sale for the Boat, Plaintiff purchased the Boat for $7,000. *See* Dkt. 73-4. The Marine Bill of Sale listed Plaintiff's address as 4434 San Fernando Ln., McKinney, Texas 75070 (the "McKinney address"). *Id*. Plaintiff's friend, Dennis Dittman ("Mr. Dittman"), owned a residence located at the McKinney address. *See* Dkt. 57-5 at 6. Plaintiff is a German national who resides primarily in Germany, but travelled to the United States multiple times during the relevant time period. *See* Dkt. 4 at 2; Dkt. 57-5 at 3, 5. Plaintiff rented two rooms in Mr. Dittman's residence and identified the McKinney address as his "secondary place of residence in the United States." *See* Dkt. 57-5 at 6.

On March 13, 2017, Plaintiff submitted an online insurance application to SkiSafe for the Boat. *See* Dkt. 57-9. In his application, Plaintiff specified that the value of the Boat was $36,500. *Id*. at 2. Plaintiff did not submit any supporting documentation with his application. *See* Dkt. 57-1 at 1. SkiSafe issued an insurance quote of $637 as the yearly premium, which Plaintiff accepted. *See* Dkt. 57-10. On March 14, 2017, SkiSafe issued Ancient Mariner Policy # S33249802 (the "Policy") to Plaintiff, with effective dates of March 14, 2017, to March 14, 2018. *See* Dkt. 57-2 at 2. The McKinney address was listed as Plaintiff's address in the Policy. *Id*. The Policy further specified that the Boat was located in Saint Paul, Texas. *Id*.

Two weeks after the Policy was issued, Plaintiff submitted an insurance claim for an incident involving the Boat that occurred on March 25, 2017. *See* Dkt. 57-1 at 3. On March 27, 2017, Plaintiff emailed a written statement to Tommy Suggs, a SkiSafe claims adjuster. *See* Dkt. 57-3, Dkt. 57-4. The statement described the Boat incident as follows:

> We drove with the boat on Lake Lewisville and while driving I believe we struck something. Some time later the motor suddenly stopped and the boat came to a stop rapidly. Then I discovered t[h]e entire engine room was flooded. The boat was then even sinking faster and water came inside through all deck drain holes. While we tried to find the leak, under water, the engine hatch fell on my passenger[']s[ ]hand and did hurt him very bad, that he couldn't move his arm anymore. The boat then sunk pretty much all the way until the very top. We spotted some other boaters that saw us and rushed tout [sic] help us. We then we're [sic] able to secure the boat to their boat while the top deck still showed above the water line and bring it to shore. After that we called the police and had other people help us to pull the boat out of the water.
>
> We both dropped our phones and an ipad into the water. My passenger Dennis also lost his wedding ring while we grabbed into the water oil mix to find the leakage.
>
> The passenger[']s name is Dennis Dittman[.]

*See* Dkt. 57-3.

Two days later, on March 29, 2017, SkiSafe sent Jim McDougal ("Mr. McDougal"), owner of Marine Specialty Inspections LLC, to inspect the Boat. *See* Dkt. 57-8. At the time of this inspection, the Boat was located in the backyard of the McKinney address. *Id*. Mr. McDougal noted during his inspection that the Boat's engine was marked with serial number 1A351718. *Id*. at 2. After inspecting the Boat, Mr. McDougal indicated that he "did not observe any evidence that the [B]oat hit a submerged object[,]" or that there were "any fractures or penetrations in the hull of the [B]oat." *Id*. The only explanation Mr. McDougal had for the Boat taking on water "was a broken plastic elbow fitting in the starboard side aft deck drain system . . . in the engine compartment." *Id*.

Upon receiving Plaintiff's email statement and the inspection results, SkiSafe's claims department began requesting documentation from Plaintiff regarding the Boat. On April 5, 2017, adjuster Tommy Suggs ("Mr. Suggs") sent Plaintiff an email requesting a copy of the bill of sale for the Boat. *See* Dkt. 57-4 at 1. On April 24, 2017, Mr. Suggs sent another request for documentation: "The boat is a total loss. Before we can issue a settlement check[,] we will need the title and registration for the boat and the trailer." *See* Dkt. 57-6 at 23. On April 26, 2017, SkiSafe claims manager Jay Blond ("Mr. Blond") sent an email advising Plaintiff he had taken over the handling of Plaintiff's claim. *See* Dkt 57-4 at 2. In the email, Mr. Blond noted that Plaintiff still had not sent in the Boat's Bill of Sale. *Id*. Mr. Blond asked for the Bill of Sale as well as "details and receipts for any and all work that was done to the [B]oat between the time of purchase and th[e] [March 25, 2017] incident[.]" *Id*. On April 28, 2017, Mr. Blond sent another email to Plaintiff requesting information and apprising Plaintiff that he had a duty under the Policy to cooperate with the investigation:

> [T]he company is requesting the information now. We have done a preliminary search in regards to your boat and have found information that the boat was purchased as a salvage vessel for $8,200. Approximately one year later you insured it for $36,500. That's obviously a very large difference. The boat had a blown engine prior, so common sense would say that you must have done a lot of major work to the boat, for significant cost, in order to get into seaworthy condition. The company is asking for your documentation to support this.
>
> Your policy also states in Part C: . . . Any person . . . making a claim must[] cooperate with us in the investigation, settlement, or defense of any claim or suit under [the] policy.

*See* Dkt. 57-6. According to Mr. Blond's affidavit, Plaintiff failed to provide the requested information. *See* Dkt. 57-1 at 3.

Therefore, in May 2017, SkiSafe retained legal counsel to take an Examination Under Oath ("EUO") of Plaintiff. *Id*. Mr. Blond avers that legal counsel made several attempts in May and

4

June 2017 to schedule Plaintiff's EUO, without success. *Id.* Approximately eighteen months later,[2] on November 13, 2018, Plaintiff appeared for an EUO in Dallas, Texas. *Id.*; *see also* Dkt. 57-5. During the EUO, Plaintiff presented documentation regarding the Boat. *See* Dkt. 57-5. Related to the purchase of the Boat, Plaintiff presented the Marine Bill of Sale from Certified Sales, which as mentioned earlier, stated that Plaintiff purchased the Boat for $7,000 on June 7, 2016. *Id.* Plaintiff testified that he also purchased a trailer for the Boat from Certified Sales for $1,200. *See* Dkt. 57-6 at 4, 6. Including auction fees, Plaintiff paid a total of $8,817 to Certified Sales via a wire transfer from Plaintiff's Bank of America account. *See* Dkt. 57-6 at 18; *see also* Dkt. 57-5 at 6, Dkt. 73-8 at 3–4. Additionally, Plaintiff presented the Texas Certificate of Title for the Boat, dated August 29, 2016. *See* Dkt. 73-3.

During the EUO, Plaintiff also submitted a letter from Jeffrey Palmer ("Mr. Palmer"), a sales manager at Certified Sales, dated April 28, 2017, wherein Mr. Palmer stated the Boat: "was sold for Kars4Kids boat campaign without an engine. The vessel was not damaged or salvaged. It was sold for the foundation as-is." *See* Dkt. 73-5; *see also* Dkt. 73-8 at 3 (Plaintiff stated in his affidavit that he knew the Boat did not have an engine when he purchased it.). Plaintiff testified that he paid a marine mechanic named Fernando Hernandez ("Mr. Hernandez") $20,000 in cash to install a used engine on the Boat prior to the incident that formed the basis of this lawsuit. *See* Dkt. 57-5 at 12. Plaintiff testified that he found Mr. Hernandez on Craigslist. *Id.* The only "receipt" Plaintiff testified as having for the engine purchase and installation was a handwritten "Bill of Sale", which stated:

> I, Fernando Hernandez hereby sell a Mercruiser 8.2 marine engine with catalyst system. Serial # OW651944 incl. installation and all necessary parts for installation in the amount of:

---

[2] Aside from a few email communications between Plaintiff and Axis's legal counsel in June 2017, *see* Dkt. 73-10, neither party presented any evidence as to what transpired during this eighteen-month period.

20,0000[]– USD

The amount is due in full at time of delivery after sea trail [sic] in cash.

Ralf Vollandt, 4344 San Fernando Lane, McKinney, TX[.]

Dkt. 57-7. The above document was dated September 2, 2016, and signed by both Plaintiff and Mr. Hernandez. *Id*. Plaintiff indicated in his affidavit that he met Mr. Hernandez twice in McKinney before the engine installation. *See id.* at 4. Plaintiff then returned to Germany and sent the handwritten contract to Mr. Dittman by post with instructions to "handle the matter with Mr. Hernandez." *Id*. When Mr. Hernandez came to the McKinney address to pick up the Boat, Mr. Dittman asked him to sign the contract. *Id*. When the engine installation was complete, Mr. Hernandez took the Boat back to the McKinney address, where he tested it in front of Mr. Dittman while Plaintiff watched on Skype. *Id*. In addition to installing the engine, Plaintiff indicated that Mr. Hernandez repaired the Boat's speaker system and installed a marine radio. *Id*. at 5.

During the EUO, Plaintiff provided a handwritten note that listed Mr. Hernandez's address as "4003 Washington St., Greenville TX." *See* Dkt. 57-1 at 3–4. Plaintiff did not provide Mr. Hernandez's phone number or any other contact information. *Id*. at 4. According to Mr. Blond, SkiSafe attempted to locate Mr. Fernandez, but was unsuccessful in its efforts. *Id*. During its search, SkiSafe accessed Hunt County Appraisal District records, which cover Greenville, Texas, and discovered there was no property located at the address Plaintiff provided for Mr. Hernandez. *Id*.

In addition to the $20,000 Plaintiff said he spent on the engine, Plaintiff testified during the EUO that he spent an additional $9,000 on other repairs and purchase of various items for the Boat. *See* Dkt. 57-5 at 16–17 (testifying that he spent approximately $36,000 total on the Boat, of which $20,000 was spent on the engine and $7,000 on the purchase of the Boat). As to this

additional $9,000 that was spent, Plaintiff testified that he paid by cash and did not have any receipts. *Id*. at 16–17.

Approximately two months after the EUO, on January 15, 2019, Plaintiff sent Axis a "Supplement and correction to [his EUO] testimony." *See* Dkt. 57-6.

## II.   PROCEDURAL HISTORY

On March 21, 2019—nearly two years after the Boat incident occurred and five months after Plaintiff's EUO—Plaintiff filed suit in state court against Axis. *See* Dkt. 1-2. Axis removed the case to this Court on April 25, 2019, based on diversity jurisdiction. *See* Dkt. 1. In his First Amended Original Petition (hereinafter "First Amended Complaint"), Plaintiff alleges that Axis, doing business as SkiSafe, failed to pay for Plaintiff's damages pursuant to the Policy. *See* Dkt. 4 at 3. Plaintiff raised the following causes of action against Axis: (1) breach of contract under Texas law; (2) violations of various provisions of the Texas Insurance Code; (3) breach of the duty of good faith and fair dealing; and (4) breach of fiduciary duty. *Id*. at 3–6.

On August 27, 2021, Axis filed the present Motion seeking summary judgment on all of Plaintiff's claims. *See* Dkt. 57. Plaintiff filed a response in opposition to the Motion on December 13, 2021 (Dkt. 73), to which Axis replied on January 6, 2022 (Dkt. 75). In addition, Axis filed a Motion to Strike (Dkt. 67) evidence attached to Plaintiff's response brief, namely Plaintiff's affidavit. The Motion to Strike is fully briefed. *See* Dkts. 72, 74.

## III.   AXIS'S MOTION TO STRIKE

In its Motion to Strike, Axis seeks to strike Plaintiff's affidavit (Dkt. 73-8) from the summary judgment evidence before the Court. *See* Dkt. 67. Under Rule 56(c)(4) of the Federal Rules of Civil Procedure, an affidavit used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and

show that the affiant . . . is competent to testify on the matters stated." *See* Fed. R. Civ. P. 56(c)(4). "At the summary judgment stage, evidence relied upon need not be presented in admissible form, but it must be *capable* of being presented in a form that would be admissible in evidence." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (internal quotation marks and citation omitted). Further, mere conclusory allegations are insufficient to support, or defeat, a motion for summary judgment. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Likewise, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). With that being said, in reviewing all the evidence, including affidavits, "a court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002).

Upon consideration, the Court finds that the arguments raised in the Motion to Strike are insufficiently developed and lack merit. Axis first argues that Plaintiff's affidavit should be stricken because Plaintiff's response brief in opposition to summary judgment does not rely upon "most of the content of the [a]ffidavit." *See* Dkt. 67 at 1. Axis, however, fails to identify those portions of the affidavit that were not replied upon. *Id*. Likewise, Axis argues that the affidavit contains "numerous statements that have no foundational support" and "opinions that are unsupported and unsubstantiated." *Id*. at 4. Here too, Axis does not identify any "numerous statements" or "opinions". *Id*. Axis's bare assertions are entirely insufficient for the Court to justify taking the drastic step of striking summary judgment evidence. Axis has failed to meet its burden as the movant. It is not the Court's duty to review Plaintiff's ten-page affidavit in the first instance in effort to ascertain which portions were not relied upon in the summary judgment briefing and/or which portions lack foundational support.

Next, Axis argues that Plaintiff's affidavit is a sham affidavit because it includes "assertions that are clearly intended to change or alter Plaintiff's prior testimony." *Id*. at 1–2. But Axis does not identify any assertion in the affidavit that it considers to be a sham. The Fifth Circuit has instructed that "[g]enerally, in considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier statement." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (internal quotation marks, alteration, and citation omitted). "In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made earlier." *Id.* (internal quotation marks and citation omitted). The Court therefore declines to find that Plaintiff's affidavit is a sham affidavit, particularly since Axis has failed to identify any specific assertion by Plaintiff that is "so markedly inconsistent with a prior statement as to constitute an obvious sham." *Id*.

Next, Axis identifies two paragraphs in Plaintiff's affidavit that Axis argues should be stricken on the following grounds: they lack foundation, are either false or unsupported, not based on personal knowledge, and are hearsay. *See* Dkt. 67 at 2. The first paragraph concerns Plaintiff's statements regarding why he represented $36,500 as the value of the Boat in his insurance application. *See* Dkt. 73-8 at 5. Axis, however, acknowledges that this paragraph was not relied upon by Plaintiff in his summary judgment briefing. Thus, the Court had no reason to, nor did it, consider this paragraph in its analysis of the summary judgment motion. The second paragraph concerns Plaintiff's explanation for the delay in scheduling the EUO. *See* Dkt. 73-8 at 7–8. As to this paragraph, Axis's argument consists of a single sentence summarily contending: "These assertions lack foundation, are unsupported, are not based on his personal knowledge, and are hearsay." *See* Dkt. 67 at 2; *see also* Dkt. 74 at 3 (Axis's reply brief wherein it repeats the same

9

single sentence argument). Axis does not explain why the assertions in this paragraph constitute hearsay, lack foundation, or are not based on personal knowledge. Nor does Axis explain why Plaintiff could not present this evidence in an admissible form at trial. *See D'Onofrio*, 888 F.3d at 208 (explaining that evidence at the summary judgment stage "need not be presented in admissible form, but it must be *capable* of being presented in a form that would be admissible in evidence"). The Court therefore will not strike these paragraphs in Plaintiff's affidavit.

Finally, Axis argues that the affidavit may be invalid because "Plaintiff is a German citizen who resides in Germany" and his affidavit was notarized by a Texas notary. *See* Dkt. 67 at 4. This argument is purely speculative as Axis has provided no evidence showing that Plaintiff did not personally appear before the Texas notary. The Texas notary stated that the affidavit was "subscribed and sworn before [him]." *See* 73-8 at 10. Thus, at this juncture, Axis has provided no evidence that casts doubt on whether Plaintiff's sworn affidavit meets the prerequisites of Rule 56.

Based on the foregoing, the Motion to Strike (Dkt. 67) is hereby denied.

## IV.   AXIS'S MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984,

991 (5th Cir. 2001). In sustaining this burden, the movant must identify "those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

In response, the non-movant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 656. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. Local R. CV-56(c). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Evans v. Texas Dep't of Transp.*, 547 F. Supp. 2d 626, 636 (E.D. Tex. 2007) (citing *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322), *aff'd*, 273 F. App'x 391 (5th Cir. 2008). "In such a situation, there can be 'no genuine issue as to any material fact,' since

a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

## B.  Analysis

Axis raises three primary arguments in the Motion. The first two arguments are connected to Plaintiff's breach of contract claim: first, Axis argues that Plaintiff has failed to meet his burden of proof on damages; second, Axis argues that Plaintiff materially breached the cooperation clause of the Policy, which resulted in prejudice to Axis such that it was excused from performing under the Policy. *See* Dkt. 57 at 16–23. Axis's final argument is that Plaintiff's remaining claims are either not legally cognizable under Texas law or do not survive summary judgment. *Id.* at 23–32.

### 1.  Plaintiff's Breach of Contract Claim

"Insurance policies are contracts, and as such are subject to rules applicable to contracts generally." *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). The parties agree that Texas law governs Plaintiff's breach of contract claim. *See* Dkt. 57 at 15; Dkt. 73 at 6. "Texas requires plaintiffs raising a claim for breach of contract to show that: '(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach.'" *MDK Sociedad de Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (quoting *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019)). Axis's arguments in the Motion focus on the second and fourth elements of a breach of contract claim. *See* Dkt. 57 at 16. The Court will address each element in turn.

### a.   Cooperation Clause

Axis's arguments regarding the second element concern the "Assistance and Cooperation" provision of the Policy (hereinafter "the Cooperation Clause"). "It is well established under Texas law that an insured's breach of a cooperation provision relieves an insurer of liability on the policy." *See Philadelphia Indem. Ins. Co. v. Stebbins Five Companies*, No. 3:02-cv-1279, 2002 WL 31875596, at *5 (N.D. Tex. Dec. 20, 2002). A cooperation clause is defined as:

> a condition precedent to liability under the contract, or as a condition subsequent which may operate as a defeasance of a liability which has already attached. Such a provision is a material part of the policy; and a breach of the provision by the insured, in a material respect, constitutes a defense to liability on the policy, in the absence of a waiver by or estoppel of the insurer.

*Id.* (citations omitted). The underlying purpose of a cooperation clause "is to make it possible for an insurer to collect information while it is still fresh to enable the insurer to make a determination regarding coverage and protect itself against false or fraudulent claims." *See Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.*, No. H-07-2724, 2012 WL 290027, at *6 (S.D. Tex. Jan. 31, 2012) (citing 14 COUCH ON INSURANCE 3D § 199:4); *see also Am. Nat'l Cnty. Mut. Ins. Co. v. Medina*, No. 05-16-01062, 2018 WL 4037357, at *2 (Tex. App.—Dallas Aug. 22, 2018, no pet.) (Cooperation clauses "fulfill the reasonable purpose of enabling the insurer to obtain relevant information concerning the loss while the information is fresh.").

Here, the Cooperation Clause required in relevant part that Plaintiff, as the insured: 1) cooperate "in the investigation, settlement, or defense of any claim or suit," 2) allow Axis "to inspect and appraise all damaged property before it is repaired or disposed of," and 3) "submit to an examination under oath as often as requested[.]" *See* Dkt. 57-2 at 9–10. The language of the Cooperation Clause is similar to that in *Progressive County Mutual Insurance Co. v. Trevino*, 202 S.W.3d, 811, 815–16 (Tex. App.—San Antonio 2006, pet. denied), where the court held that the

13

cooperation clause was a condition precedent. *See id*. (finding cooperation clause required the insured, in relevant part, to "cooperate with [insurer] in the investigation, settlement, or defense of any claim or suit" and "submit to an examination under oath" (emphasis removed)). Hence, the Cooperation Clause is a condition precedent under Texas law. *See id*. at 814 ("Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." (internal citation omitted)).

Because the Cooperation Clause is a condition precedent, Axis's obligations under the Policy would be discharged if it demonstrates that Plaintiff materially breached the Cooperation Clause and the breach resulted in prejudice to Axis. *See Martinez v. ACCC Ins. Co.*, 343 S.W.3d 924, 930 (Tex. App.—Dallas 2011, no pet.) ("An insured's failure to cooperate will not operate to discharge the insurer's obligations under the policy unless the insurer is actually prejudiced[.]"); *see also Trevino*, 202 S.W.3d at 816 (finding the insurer "will not escape liability unless it was prejudiced by [the insured's] lack of cooperation."); *CGL Underwriters v. Edison Chouest Offshore, Inc.*, 8 F.3d 21 (5th Cir. 1993) ("We thus hold that the law of Texas requires an insurer to show prejudice if it is to assert breach of a cooperation clause as a defense to liability."). Determination of whether an insured materially breached a cooperation clause and whether there was resulting prejudice to the insurer are generally questions of fact. *See Frazier v. Glens Falls Indem. Co.*, 278 S.W.2d 388, 391 (Tex. Civ. App.—Fort Worth 1955, writ ref'd n.r.e.) ("Determination of what constitutes a breach of the cooperation clause of a liability policy is usually a question of fact. However, circumstances are possible of demonstration justifying courts in holding breach of the clause as a matter of law."); *Duzich v. Marine Off. of Am. Corp.*, 980 S.W.2d 857, 866 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied) (finding whether the

insurer is prejudiced is "generally a question of fact"); *Trevino*, 202 S.W.3d at 816 ("Prejudice may be established either as a matter of fact or as a matter of law."); *St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F. Supp. 2d 891, 902 (N.D. Tex. 2003) ("[I]f the undisputed facts establish prejudice sufficient to relieve an insurer of its obligations to defend or indemnify an insured, the court may decide the issue on summary judgment.").

In the Motion, Axis contends the undisputed facts show Plaintiff materially breached the Cooperation Clause by failing to "timely provide information and documentation to substantiate his claimed damages" and by delaying his EUO for eighteen months. *See* Dkt. 57 at 20–23. Axis further argues it is entitled to summary judgment as a matter of law because Plaintiff's material breach of the Cooperation Clause resulted in prejudice to Axis, thereby discharging its obligations under the Policy. *Id*. For the reasons set forth below, the Court finds that Axis is not entitled to summary judgment on this issue.

First, the summary judgment evidence does not establish that Plaintiff materially breached the Cooperation Clause as a matter of law. As stated earlier, the Cooperation Clause required Plaintiff, in relevant part, to cooperate in the investigation of his claim, allow an inspection of the Boat before it was repaired or disposed of, and submit to an examination under oath, if one was requested. There is undisputed evidence in the summary judgment record that Plaintiff allowed Axis to inspect the Boat two days after Plaintiff submitted his claim. There is also evidence of email and phone communications between Plaintiff and SkiSafe in the months after Plaintiff submitted his claim. *Cf. Martinez*, 343 S.W.3d at 929 (affirming district court's finding of failure to cooperate where insured "never contacted her insurer or its agents regarding the collision, and failed to respond to their telephone calls and letters requesting information"). Plaintiff also appeared for an EUO, during which he submitted documentation regarding his claimed damages.

15

Though Axis contends its investigation into Plaintiff's claimed damages was hindered by the eighteen month delay in the EUO, there is undisputed evidence that Axis knew as early as one month after claim submission that Plaintiff had purchased the Boat for $8,200, that the Boat "had a blown engine prior" to Plaintiff's purchase, and that Plaintiff "must have done a lot of major work to the boat, for significant cost, in order to get it into seaworthy condition." *See* Dkt. 57-6 at 21 (April 28, 2017 email to Plaintiff from Mr. Blond, SkiSafe's claims manager). Additionally, Axis does not argue that "having the documents in a more timely fashion would have protected it from fraud" or that the "information in the documents is less accurate for being less fresh." *See Cox*, 2012 WL 290027, at *6 (finding that insured's tardy submission of documentation was not a material breach of the cooperation clause).

Against the foregoing, however, there is other summary judgment evidence that presents disputed issues of fact regarding Plaintiff's cooperation and raises credibility issues that fall within the province of the jury. The parties vehemently dispute who is responsible for the delay in scheduling the EUO. *Compare* Dkt. 73-8 at 7–8 (Plaintiff's affidavit attributing delay to communication issues with Axis's legal counsel) *with* Dkt. 57-1 at 3 (Mr. Blond's affidavit attributing delay to Plaintiff) *and* Dkt. 73-10. Additionally, Plaintiff offers conflicting information regarding the submission of documents substantiating his claimed damages. More specifically, Plaintiff indicates in his affidavit that he did not submit certain documents because he believed Axis was already aware of them. *See* 73-8 at 6. He later avers that he told Mr. Blond he no longer had any records related to the Boat. *Id*. at 6–7. Plaintiff offers no explanation as to why he then produced these very records during his EUO. Even more troubling, Plaintiff admits in his affidavit that he intentionally did not submit certain documents Axis requested because Axis "would then have had all the property documents and [he] couldn't do anything else" with the Boat. *Id*. at 7 ("I

16

decided at the time not to send the title for the boat and the trailer because that would give [SkiSafe] everything . . . Also, I couldn't sell the boat in this way to avoid any further costs of the total loss. So I had to pay further costs until today, because the insurance company would then have had all the property documents and I couldn't do anything else[.]"). Plaintiff's assertions raise material issues of fact as well as credibility determinations that the Court cannot resolve on summary judgment. *See Medina*, 2018 WL 4037357, at *3 ("[P]urposeful falsification of material information by the insured is a breach of the cooperation clause."). Thus, the Court is unable to find that Plaintiff materially breached the Cooperation Clause as a matter of law. *See Frazier*, 278 S.W.2d at 392 (holding summary judgment is improper where there is disputed evidence as to whether a material breach of the cooperation clause occurred and "reasonable minds might differ in the ultimate conclusion to be drawn from the evidence").

Second, even if the Court found a material breach of the Cooperation Clause, Axis has not shown prejudice as a matter of law. In demonstrating prejudice, the "insurer must offer more than the mere fact that it cannot employ its normal procedures in investigating and evaluating the claim." *Trumble Steel Erectors, Inc. v. Moss*, 304 F. App'x 236, 244 (5th Cir. 2008) (internal quotation marks and citation omitted). In the Motion, Axis argues "Plaintiff's failure to cooperate caused significant obstruction and delay of [its] investigation and evaluation of the claim" and further, that "such obstruction and delay . . . was the source of the prejudice to [Axis]." *See* Dkt. 57 at 22. Axis's argument that it was unable to employ its normal investigation timeline is insufficient to establish prejudice as a matter of law. *See Edward & Edna Elbaor Fam. P'ship #4 v. State Farm Lloyds*, No. 4:18-cv-556, 2019 WL 4055178, at *4–5 (N.D. Tex. May 14, 2019) (no prejudice shown where insurer only claimed that insured's failure to cooperate resulted in it being unable to employ its normal claim investigation and evaluation process). Axis also argues that

Plaintiff's untimely disclosure of Mr. Hernandez's work on the Boat resulted in prejudice because Axis was unable to locate Mr. Hernandez "to have him provide information and documentation about the used engine." *See* Dkt. 57 at 22–23. But, even if Plaintiff had timely disclosed Mr. Hernandez's work to Axis, there is no indication that Axis would have been any more successful in locating him. To the extent Axis questions the proof Plaintiff provided regarding Mr. Hernandez's work or implies that Plaintiff intentionally did not provide valid contact information for Mr. Hernandez, such questions are issues of fact and credibility that cannot be decided at the summary judgment stage. In sum, Axis is not entitled to summary judgment on the Cooperation Clause issue.

### b. Damages

Axis argues it is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has "presented only unsubstantiated evidence of his claimed damages." *See* Dkt. 57 at 16. Axis specifically contends Plaintiff is unable to prove his alleged contract damages of $36,500. *Id*. at 16–20.

"To recover damages for breach of contract, a plaintiff must show that he suffered a pecuniary loss as a result of the breach." *Azz Inc. v. Morgan*, 462 S.W.3d 284, 289 (Tex. App.—Fort Worth 2015, no pet.). "Such losses must be the natural, probable, and foreseeable consequence of the defendant's conduct." *Id*. (internal citation omitted). "A plaintiff may not recover breach-of-contract damages if those damages are remote, contingent, speculative, or conjectural." *Id*.

The Court finds that summary judgment on this issue is improper for two reasons. First, Axis's briefing overlooks the fact that there is undisputed evidence regarding at least some of Plaintiff's alleged contract damages. That is, Plaintiff has submitted evidence regarding the amount for which he purchased the Boat and trailer. *See* Dkt. 57-6 at 4, 6, 18; Dkt. 57-5 at 6; Dkt.

73-4; Dkt. 73-8 at 3–4. Not only does Axis not challenge the sufficiency of this evidence, Axis has also presented summary judgment evidence regarding the purchase price of the Boat. *See* Dkt. 57-6 at 21 (Mr. Blond's email stating that SkiSafe's preliminary search revealed information that the Boat was purchased for $8,200).

Second, Axis's sufficiency challenge is directed at the proof Plaintiff submitted regarding the $20,000 in cash he allegedly paid Mr. Hernandez for the used engine installation. Though Axis argues this evidence is insufficient as a matter of law, *see* Dkt. 57 at 17–19, the Court disagrees and finds that the evidence raises fact and credibility issues that cannot be decided on summary judgment. Axis specifically raises the following concerns regarding the handwritten Bill of Sale Plaintiff submitted for Mr. Hernandez's work: 1) the Bill of Sale preceded Mr. Hernandez's work on the Boat and Plaintiff's alleged payment of $20,000 in cash to Mr. Hernandez; 2) Plaintiff and Mr. Hernandez's signatures on the Bill of Sale are both dated September 2, 2016, but Plaintiff stated in his EUO corrections that he signed and mailed the Bill of Sale from Germany to Mr. Dittman to present to Mr. Hernandez; 3) the engine serial number listed in the Bill of Sale does not match the serial number of the engine that was in the Boat at the time of Mr. McDougal's inspection; 4) the Bill of Sale does not itemize the cost of the engine and Mr. Hernandez's labor costs; and 5) Plaintiff has not shown that the $20,000 Plaintiff allegedly paid was reasonable and necessary. *See* Dkt. 57 at 18–19. These arguments, even if valid, ask the Court to weigh the evidence Plaintiff has submitted regarding the $20,000 in claimed damages and make credibility determinations, which are not proper at summary judgment. *See Sandstad*, 309 F.3d at 896 (at summary judgment, a court "must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence"). Accordingly, Axis is not entitled to summary judgment on Plaintiff's breach of contract claim.

### 2.   Plaintiff's Claims under Chapter 542 of the Texas Insurance Code

In the First Amended Complaint, Plaintiff asserts a claim against Axis for "failure to timely pay Plaintiff's property damage claims" under Chapter 542 of the Texas Insurance Code. *See* Dkt. 4 at 4. "The Texas Prompt Payment of Claims Act [(the "Act")], codified in Insurance Code Chapter 542, imposes deadlines on insurers to pay valid claims." *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 652 (Tex. 2021). "If an insurer fails to comply with Chapter 542, then it is liable for statutory interest on the amount of the claim and attorney's fees." *Id*. Though the Act's "purpose relates specifically to prompt payment of claims, the [Act] also contains specific requirements and deadlines for responding to, investigating, and evaluating insurance claims." *Barbara Technologies Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 812 (Tex. 2019) (emphasis removed).

Axis argues it is entitled to summary judgment because the Act expressly excludes marine insurance policies such as the one that is the subject of this lawsuit. *See* Dkt. 57 at 24–25. The Court agrees. Section 542.053 of the Act, entitled "Exception," sets forth various exceptions to the Act's requirements. *See* TEX. INS. CODE ANN. § 542.053(a). This section states, in relevant part, that the Act does not apply to "marine insurance as defined by [Texas Insurance Code] Section 1807.001." *See id*. § 542.053(a)(5). Section 1807.001, in turn, defines marine insurance as insurance or reinsurance that covers loss or damage to "a hull, vessel, or craft of any kind, an aid to navigation, a dry dock, or a marine railway, whether complete, under construction, or awaiting construction." *See id*. § 1807.001(2)(A)(i)(a). The Policy is undisputedly a marine insurance policy within the meaning of Section 1807.001. Because the Act expressly excludes marine insurance policies from its requirements, Plaintiff's "prompt payment" claim under Chapter 542 is not legally cognizable and fails as a matter of law.

Plaintiff's First Amended Complaint also raises a claim against Axis for "not attempting in good faith to effect a prompt fair and equitable settlement of a claim submitted in which liability has become reasonably clear," in violation of Section 542.003(b)(4) of the Texas Insurance Code. *See* Dkt. 4 at 5. Section 542.003(b), also known as the Texas Unfair Settlement Practices Act, prohibits an insurer from engaging in certain conduct, including "not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim . . . [for] which liability has become reasonably clear." *See* TEX. INS. CODE ANN. § 542.003(b)(4). Axis argues this claim also fails as a matter of law because there is no private right of action for violations of the Texas Unfair Settlement Practices Act. *See* Dkt. 57 at 25. The Court agrees. Unlike the Texas Prompt Payment of Claims Act which explicitly provides for a private right of action, the Unfair Settlement Practices Act does not, instead referring only "to enforcement by the Texas Department of Insurance and the State Attorney General." *See Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 714 (S.D. Tex. 2013). Consequently, Plaintiff's claim under Section 542.003(b)(4) fails as a matter of law.

Thus, Axis is entitled to summary judgment on Plaintiff's Chapter 542 claims.

### 3.  Plaintiff's Claim for Breach of Fiduciary Duty

Plaintiff's First Amended Complaint asserts a claim against Axis for breach of fiduciary duty based on "the relationship that existed between" Axis and Plaintiff at the time of Plaintiff's claim. *See* Dkt. 4 at 4. As Axis points out in its Motion, "[t]here is no general fiduciary duty between an insurer and its insured" under Texas law. *See Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 96 (Tex. App—Houston [1st Dist.] 2003, pet. denied) (stating the court was "not aware of any Texas case that has found a fiduciary relationship between an insured and its insurer."). Here, Plaintiff only summarily alleges a fiduciary relationship existed between the

parties based solely on the Policy. He does not allege that a special relationship of trust and confidence existed between the parties prior to, and apart from, the Policy. *See Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 678 (Tex. App.—Fort Worth 2010, no pet.) (noting the fiduciary relationship "must exist prior to and apart from the agreement that is the basis of the suit[.]" (emphasis removed)); *see Wayne Duddlesten*, 110 S.W.3d at 96 (holding the plaintiff did not allege facts, even after being allowed time to replead, demonstrating that informal, confidential relationship existed between the parties that was formed prior to and apart from insurance contracts). Thus, Plaintiff's claim for breach of fiduciary duty fails as a matter of law. *See Rice*, 324 S.W.3d at 679 (determining that no fiduciary relationship existed between insurer and insureds, and thus no claim for breach of fiduciary duty, because "an insurer does not generally have a fiduciary duty toward its insured" and there was no evidence presented of any relationship between the insureds and insurer "apart from the coverage at issue in [the] case"). Axis is entitled to summary judgment on this claim.

### 4. Plaintiff's Claims for Breach of Duty of Good Faith and Fair Dealing and Violation of Chapter 541 of the Texas Insurance Code

Plaintiff's First Amended Complaint asserts a claim for breach of the duty of good faith and fair dealing. *See* Dkt. 4 at 5. Plaintiff specifically alleges Axis breached "its duty of good faith and fair dealing by engaging in unfair and improper settlement practices." *Id*. Plaintiff further alleges Axis "has not made any settlement offer, or has made an improper settlement offer, based on the results of a poorly conducted investigation of the incident, injuries, and damages giving rise to Plaintiff's claims." *Id*. In addition, Plaintiff's First Amended Complaint asserts a claim under Chapter 541 of the Texas Insurance Code for "unfair settlement practices." *See id*.

"Texas law recognizes a duty of good faith and fair dealing in the insurance context." *Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 389 (Tex. App.—Houston [1st Dist.] 2011, no

22

pet.). "An insurer breaches its duty of good faith and fair dealing when it fails to settle a claim when it knew or should have known that it was reasonably clear the claim was covered." *Pham v. State Farm Lloyds*, No. 07-17-00366-CV, 2018 WL 5260659, at *4 (Tex. App.—Amarillo Oct. 22, 2018, no pet.) (mem. op.). "Similar to that common-law duty, the Insurance Code supplements the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018). "A claim for breach of the policy is a 'contract cause of action,' while a common-law or statutory bad-faith claim 'is a cause of action that sounds in tort.'" *Id*. at 489 (internal citations omitted). "Liability under § 541 of the Texas Insurance Code is analyzed under the same standard as common-law bad faith claims." *Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc.*, No. 3:15-CV-3632, 2017 WL 3658841, at *14 (N.D. Tex. Aug. 24, 2017). "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

In its Motion, Axis argus it is entitled to summary judgment as to these claims for two reasons: first, the "uncontroverted evidence [presented on summary judgment] shows that [Axis] did not fail to conduct a reasonable investigation", and second, the evidence shows only a bona fide coverage dispute. *Id*. at 27–32. The summary judgment evidence, however, viewed in the light most favorable to Plaintiff, demonstrates a fact issue on the question of whether Axis failed to timely investigate Plaintiff's claim. As noted earlier, the parties dispute who is responsible for the delay in scheduling the EUO. Because there are disputed issues of fact, the Court must deny summary judgment as to these two claims.

## V.    <u>CONCLUSION</u>

For the reasons set forth above, it is **ORDERED** that:

1.  Axis's Motion to Strike (Dkt. 67) is **DENIED**;

2.  Axis's Motion for Summary Judgment (Dkt. 57) is **GRANTED IN PART AND DENIED IN PART**; and

3.  Plaintiff's claims for breach of fiduciary duty and violations of Chapter 542 of the Texas Insurance Code are hereby **DISMISSED WITH PREJUDICE**.

  **So ORDERED and SIGNED this 17th day of March, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE